IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–01342–REB–KMT

ERIC BROWN #48834,

Plaintiff,

v.

IDAHO DEPARTMENT OF CORRECTIONS,
IDAHO ATTORNEY GENERAL'S OFFICE,
VIRTUAL WARDEN TIM HIGGINS,
WARDEN TIMOTHY WENGLER,
ASSISTANT WARDEN TOM KESSLER,
H.S.A. ACEL K. THACKER, CCHP,
DR. KIRK STANDER,
DR. DAVID AGLER,
KIT CARSON CORRECTIONAL CENTER,
WARDEN VANCE EVERETT,
ASSISTANT WARDEN GREG WILKINSON,
DR. SUSAN TIONA,
H.S.A. JODI GRAY,
CORRECTIONS CORPORATION OF AMERICA,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on Defendant Idaho Department of Corrections, Idaho Attorney General's Office, and Virtual Warden Tim Higgin's (hereinafter the "Idaho State Defendants") Motion to Dismiss (Doc. No. 66, filed Feb. 18, 2014) and incorporated Memorandum in Support (Doc. No. 66-1 [Memo]). For the following reasons, the Idaho State Defendants' Motion to Dismiss is GRANTED.

**FACTUAL BACKGROUND**

The following facts are taken from Plaintiff's First Amended Complaint (Doc. No. 25 [FAC]) and the parties briefing with respect to this Recommendation. Plaintiff is an inmate in the custody of the Idaho Department of Corrections (IDOC) who is currently incarcerated at Kit Carson Correctional Center (KCCC) in Burlington, Colorado. (FAC ¶ 1, 20.) Plaintiff alleges that the Idaho State Defendants—along with a number of other Colorado- and Idaho-based defendants—violated his constitutional rights, as well as his rights under the Americans with Disabilities Act, 42 U.S.C § 12181 *et seq.*, by failing to adequately treat his migraine headaches. (*See generally id.*)

In June 1996, Plaintiff was sentenced to the care and custody of the IDOC. (*Id.* ¶ 19.) From August 1996 through December 1998, Plaintiff was housed at the IDOC's Idaho Correction Institution - Orofino. (*Id.* ¶ 20.) During that time, Plaintiff experienced the occasional severe headache, but did not seek medical care as he assumed the headaches were stress-related. (*Id.* ¶ 21.)

From December 1998 to January 2002, Plaintiff was housed at the IDOC's Idaho Maximum Security Institution (IMSI). (*Id.* ¶ 22.) While at IMSI, Plaintiff's headaches grew more severe and frequent, which prompted Plaintiff to contact the IMSI medical department. (*Id.* ¶ 23.) After trying various medications, the IMSI medical department ultimately determined that Imitrex effectively controlled the pain from Plaintiff's migraine headaches. (*Id.* ¶ 24.) Plaintiff was permitted to keep his Imitrex on his person. (*Id.*)

From January 2002 through the present, Plaintiff was housed at several private prisons operated by Defendant Corrections Corporation of America (CCA). (*Id.* ¶ 27.) During that time, Plaintiff was offered pain medications that failed to alleviate the pain associated with his migraines; was denied Imitrex as a "non-formulary" drug; and was thus forced to "self-medicate" by using pain medication available through the prison commissary, such as Tylenol and aspirin. (*See, e.g. id* ¶¶ 28-30, 34-35, 53.)

Plaintiff also saw three neurologists for his migraine headaches. (*Id.* ¶¶ 42-45, 51-52.) The first two neurologists recommend a combination of a CAT scan, an MRI, a sleep study, a dietary change of avoiding processed meats, and a prescription of Elavil. (*See id.*) The third neurologist stated that it was necessary for Plaintiff to carry Imitrex on his person so that he could counteract migraines as soon as they began. (*Id.* ¶ 60.)

Plaintiff was never given a CAT scan or a sleep study and only had one MRI performed in March 2010. (*Id.* ¶¶ 46-47.) Plaintiff was also unable to avoid processed meats because it was a "staple" of the prison menu and the available vegetarian diet caused him "gastric distress." (*Id.* ¶ 50.) In addition, Elavil did not effectively alleviate Plaintiff's migraines and, further, caused him to be disoriented and inattentive. (*Id.* ¶ 53.)

In August 2012, Plaintiff was transferred to KCCC. (*Id.* ¶ 62.) Plaintiff met with Defendant Tiona, a doctor at KCCC, about his migraines and proposed that he (1) be issued Imitrex to be carried on his person, and (2) be allowed to wear tinted glasses or sunglasses indoors as the fluorescent lighting at KCCC contributed to his migraine headaches. (*Id.* ¶ 66.) Despite acknowledging that photophobia often contributes to migraine headaches, Defendant

Tiona did not approve Plaintiff's request for tinted glasses or sunglasses. (*Id.* ¶¶ 67-68.) Further, although Plaintiff was given a prescription for Imitrex, he has to go to the KCCC medical department and often wait for hours to obtain a dose of the medication, contrary to the neurologists advice that he take it immediately upon the presentation of migraine symptoms. (*Id.* ¶¶ 70-75.)

Plaintiff alleges he brought his medical issues to the attention of IDOC contract monitors who have toured KCCC. (*Id.* ¶ 79.) Plaintiff also alleges that he spoke with Defendant Higgins, the IDOC representative responsible for all IDOC inmates housed at KCCC, who told Plaintiff he would get back to him. (*Id.* ¶¶ 4, 80.) However, Defendant Higgins never followed-up with Plaintiff. (*Id.* ¶ 80.)

Plaintiff alleges that he suffers from chronic kidney disease and that it is a medical fact that prolonged use of aspirin and "NSAIDs"[1] causes liver and/or kidney damage. (*Id.* ¶¶ 83-84.) Thus, he alleges that he suffered kidney damage by being effectively forced to take pain medication available through the commissary to treat his migraine headaches. (*Id.* ¶¶ 85-91.)

**PROCEDURAL HISTORY**

In his First Amended Complaint, filed August 21, 2013, Plaintiff asserts a claim for violations of his rights under the ADA, as well as claims pursuant to 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights.[2] After being served on January 28,

---

[1] The court believes this reference is to "non-steroidal anti-inflammatory drugs."

[2] Plaintiff also asserts a claim under the Fifth Amendment. However, because Defendants are all state actors, the Fifth Amendment is inapplicable. *Parsini v. Colo. State Hosp.*, 992 F.2d 1223, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993) ("State actors are subject to the due processs

2014 (*see* Doc. Nos. 58-60), the Idaho State Defendants' Motion and Memorandum to Dismiss were filed on February 18, 2014 (*see* Mot. Dismiss; Memo). Plaintiff filed a Response on March 14, 2014 (Doc. No. 76) and the Idaho State Defendants filed a Reply on March 31, 2014 (Doc. No. 80). Accordingly, this matter is ripe for the court's review and recommendation.

## LEGAL STANDARDS

### *A.* Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those

---

clause of the Fourteenth Amendment, not the Fifth Amendment.").

issues").

***B. Lack of Subject Matter Jurisdiction***

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a

party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

***C. Lack of Personal Jurisdiction***

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the person." Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of establishing personal jurisdiction over Defendants. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). In the preliminary stages of litigation, Plaintiff's burden is light. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other materials, Plaintiff need only make a *prima facie* showing that jurisdiction exists. *Id.*

Plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). The allegations in Plaintiff's complaint "'must be taken as true to the extent they are uncontroverted by [Defendants'] affidavits.'" *Wenz*, 55 F.3d at 1505 (*quoting Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992)). If the parties present conflicting affidavits, all factual disputes must be resolved in Plaintiff's favor, and "plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (citation omitted). Only well-pleaded facts,

as opposed to mere conclusory allegations, must be accepted as true. *Id.*

To determine whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action, the court looks to the law of the forum state. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). In Colorado, the assertion of personal jurisdiction must both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process. *Id.*; *Doering v. Copper Mountain*, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992). Colorado's long-arm statute subjects a defendant to personal jurisdiction for engaging in — either in person or by an agent — the "commission of a tortious act within this state," or the "transaction of any business within this state." Colo. Rev. Stat. §§ 13–1–124(1)(a)–(b) (2007). To comport with due process, a defendant must have minimum contacts with the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Colorado's long-arm statute is a codification of the "minimum contacts" principle required by due process. *See Lichina v. Futura, Inc.*, 260 F. Supp. 252, 255 (D. Colo. 1966). Accordingly, under Colorado law, a court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See OMI Holdings, Inc.*, 149 F.3d at 1090; *Scheur v. Dist. Ct.*, 684 P.2d 249 (Colo. 1984).

***D. Failure to State a Claim for Relief***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 680. Second, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663.

Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation omitted).

In making the required determination, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."). "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

**ANALYSIS**

***A. Personal Jurisdiction over Defendant Idaho Attorney General's Office***

The Idaho State Defendants argue that the court lacks jurisdiction over the Idaho Attorney General's Office (hereinafter "Idaho AGO"). (Memo. at 5-6.) The court agrees.

The court must conduct a two-step analysis to determine whether the exercise of personal jurisdiction over a defendant complies with due process. First, the court must examine "whether

the [nonresident] defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being haled into court there." *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) (citation and quotation marks omitted). Second, if the defendant has sufficient contacts, the court then asks "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances. *Id.* (citation and some quotation marks omitted).

The "minimum contacts" requirement of due process may be met by showing the existence of general or of specific jurisdiction. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996). The requisite minimum contacts exist if the nonresident defendant has continuous and systematic contacts with the forum state (general jurisdiction) or if the defendant (1) has purposefully directed activities at forum residents or otherwise acted to avail herself purposefully of the privilege of conducting activities there and (2) the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction). *Impact Prods., Inc. v. Impact Prods, LLC,* 341 F.Supp.2d 1186, 1190 (D. Colo. 2004).

Plaintiff has not alleged facts in his First Amended Complaint suggesting that the Idaho AGO has "continuous and systematic general business contacts" with Colorado. As such, the exercise of general personal jurisdiction over the Idaho AGO would be improper.

Further, the court finds that the exercise of specific jurisdiction over the Idaho AGO would not be appropriate. Plaintiff argues that the court has personal jurisdiction over the Idaho AGO because it "is responsible for overseeing operations at the private prisons and enforcing the

contract. (Resp. at 1.) (*See also* FAC ¶ 3 ("Defendant Idaho [AGO] . . . is responsible for monitoring IDOC prisoners housed in non-IDOC facilities[,] . . . ensures that IDOC prisoners are provided with the care and custody levels and enforces the contracts with private prisons housing IDOC prisoners.") However, the Tenth Circuit has held that personal jurisdiction does not arise simply because officials have exercised supervisory responsibilities over the operations of prisons in Colorado. *See Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state."). Otherwise, Plaintiff's complaint does not include any facts suggesting that the Idaho AGO has minimum contacts with Colorado—in fact, Plaintiff does not allege that the Idaho AGO was involved in conduct that allegedly violated his ADA and constitutional rights. (*See* FAC.) Accordingly, the court finds that Plaintiff has not made a *prima facie* showing that the court has personal jurisdiction over the Idaho AGO. Therefore, the Idaho AGO is properly dismissed for lack of personal jurisdiction.

### *B. § 1983 Claims*

#### *1. Eleventh Amendment Immunity*

The Idaho State Defendants argue that the IDOC and Idaho AGO[3] are immune from Plaintiff's § 1983 claims altogether and that Defendant Higgins in his official capacity[4] are

[3] The court considers this argument as to the Idaho AGO in the alternative to the Idaho State Defendants' argument that the court lacks personal jurisdiction over the Idaho AGO.

[4] It is unclear whether Plaintiff asserts claims against Defendant Higgins in his official capacity. Nevertheless, because Plaintiff is proceeding *pro se*, the court broadly construes the First

immune from Plaintiff's § 1983 claims for money damages. (Memo. at 8-9.) The court agrees.

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment thus bars suit in federal court against a state by its own citizens. *Edelman v. Jordan*, 145 U.S. 651, 662-63 (1974). The immunity conferred by the Eleventh Amendment extends to a state and its instrumentalities, including state agencies. *Northern Ins. Co. of N.Y.*, 547 U.S. 189, 193 (2006); *Meade v. Grubbs*, 841 F.2d 1512, 1525 (10th Cir. 1988) *called into doubt on other grounds by Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013)).

There are two recognized exceptions to this immunity—waiver by the state and valid abrogation of the state's immunity by Congress. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam); *Nelson v. Geringer*, 295 F.3d 1082, 1096 (10th Cir. 2002) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54-55 (1996)). If a state and its agencies are immune from suit under the Eleventh Amendment, such immunity applies regardless of the relief requested, thus protecting the state and its agencies from suit for both legal and equitable relief. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66 (2002); *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507

---

Amended Complaint to allege claims against Defendant Higgins in both his individual and official capacities. *See Hull v. State of N.M. Taxation and Revenue Dep't's Motor Vehicle Div.*, 179 F. App'x 445, 447 (10th Cir. 2006) (holding that when a *pro se* litigant in a § 1983 case has failed to specify whether she was suing the defendant in her official or individual capacity, the court would "give [the plaintiff] the benefit of [the] doubt" and construe the claim to involve both capacities).

F.3d 1250, 1252 (10th Cir. 2007).

The State of Idaho has not made a general waiver of its Eleventh Amendment sovereign immunity. *Citizens of Idaho v. Idaho*, No. 1:11-cv-0620-ELJ-LMB, 2012 WL 3905234, at *2 (D. Idaho Aug. 15, 2012) *recommendation adopted at* 2012 WL 3906721 (Sept. 7, 2012) (citing *Hickman v. Idaho State Sch. & Hosp.*, 339 F. Supp. 463 (D. Idaho 1972)). Nor has Congress abrogated sovereign immunity from claims brought under 42 U.S.C. § 1983, *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Further, it cannot be disputed that both the IDOC and the Idaho AGO are state agencies. As such, the Eleventh Amendment precludes Plaintiff's Section 1983 claims against the IDOC and the Idaho AGO.

In addition, Plaintiff's § 1983 claims for monetary relief against Defendant Higgins in his official capacity are barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03, 105-06 (1984) (citing *Edelman*, 415 U.S. at 666-667 (Eleventh Amendment bars claims for monetary relief against state officials in their official capacities). However, the Eleventh Amendment does not bar claims for injunctive relief against a state-official defendant in his or her official capacity. *Id.; Ex Parte Young*, 209 U.S. 123, 155-156 (1908). Nevertheless, as discussed *infra*, Plaintiff fails to state a claim for relief under § 1983 against Defendant Higgins.

Accordingly, Plaintiff's § 1983 claims against the IDOC and Idaho AGO, as well as Plaintiff's § 1983 claims for money damages against Defendant Higgins in his official capacity, are barred by the Eleventh Amendment and are therefore properly dismissed for lack of subject matter jurisdiction.

**2. *Failure to State a Claim for Relief***

The Idaho State Defendants argue that Plaintiff has failed to state a claim for relief against Defendant Higgins and that, as a consequence he is entitled to qualified immunity. (Memo. at 9-10.) The court agrees.[5]

Plaintiff's only factual allegation against Defendant Higgins is that Defendant Higgins failed to follow-up with Plaintiff after speaking with Plaintiff about his medical issues. (FAC ¶ 80.) However, as Plaintiff admits in his Response, at very best, this allegation suggests that Defendant Higgins was negligent with respect to Plaintiff's medical needs. (Resp. at 3.) Mere inadvertence or even negligence is insufficient to state an Eighth Amendment claim based on a failure to provide adequate medical care. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198 n.5 (1989); *see also Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006) (a "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation"). Similarly, allegations that prison officials acted with simple negligence are insufficient to raise due process concerns. *See Daniels v. Williams,* 474 U.S. 327, 330-31 (1986) (overruling prior precedent "to the extent that it states that mere lack of due care by a state official may 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment"). As a consequence, Plaintiff's allegation that Defendant Higgins failed to follow up with him is insufficient to state a § 1983 claim for violations of his Eighth or

[5] Because the court finds that Plaintiff fails to state a claim for relief under § 1983 against Defendant Higgins, the court does not address the Idaho State Defendants alternative argument that Plaintiff's § 1983 claims are barred to the extent that they relate to conduct occurring prior to October 21, 2011. (Memo. at 7.)

Fourteenth Amendment rights.

Plaintiff also asserts that Defendant Higgins can be held liable under § 1983 because he is directly responsible for the care and custody of the prisoners placed in his control. (Resp. at 3.) Despite Plaintiff's protestations to the contrary (*see id.*), this seeks to hold Defendant Higgins liable in his supervisory-capacity. "Section 1983 does not authorize liability under a theory of *respondeat superior*," *i.e.* vicarious liability. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Thus, the Supreme Court has suggested the term "supervisory liability" is "a misnomer." *Iqbal,* 556 U.S. at 677. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." *Id.* at 676.

A plaintiff may demonstrate this requisite personal involvement of a supervisor by alleging facts showing that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). Here, however, Plaintiff has not alleged any facts suggesting that Defendant Higgins was responsible for a policy that caused the alleged deprivation of his constitutional rights. Furthermore, Plaintiff's allegations do not demonstrate that Defendant Higgins acted with the intent or deliberate indifference required to establish a claim under the Eighth or Fourteenth Amendments.

Accordingly, the court finds that Plaintiff has failed state a plausible claim for relief against Defendant Higgins. As a consequence, Defendant Higgins is entitled to qualified immunity from Plaintiff's § 1983 claims. *See Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (to

overcome a defendant's assertion of qualified immunity, the plaintiff must establish that (1) the defendant violated the Constitution and (2) the applicable law was clearly established). Therefore, Plaintiff's § 1983 claim is properly dismissed as to Defendant Higgins.

***C. ADA Claim***

***1. Individual Liability***

The Idaho State Defendants argue that Defendant Higgins cannot be held individually liable under the ADA. (Memo at 11.) The court agrees.

Plaintiff does not state which particular provision of the ADA he believes the Idaho State Defendants violated; however, it appears that "[t]he ADA's Title II, prohibiting discrimination in the distribution of public services, is the only title" that Plaintiff's allegations arguably implicate. *White v. State of Colo.*, 82 F.3d 364 367 n.5 (10th Cir. 1996). *See also Pennsylvania Dep't of Corrs. v. Yeskey,* 524 U.S. 206 (1998) (Title II of the ADA applies to state prisons and prison services). "The proper defendant in a claim under Title II of the ADA is the public entity itself or an official acting in his or her official capacity on behalf of the public entity. Title II does not provide for suit against an official of a public entity in their individual capacity." *Nasious v. Colorado – Office of the Governor,* No. 09-cv-010510-REB-KMT, 2011 WL 2601015, at *3 (D. Colo. June 29, 2011) (citing *Everson v. Leis*, 556 F.3d 484 501 (6th Cir. 2009)); *see also A.B. ex rel. B.S. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226, Colo. Feb. 13, 2012) (citing *Montez v. Romer*, 32 F. Supp. 2d 1235, 1241 (D. Colo. 2011)). Accordingly, Plaintiff's ADA claim is properly dismissed as to Defendant Higgins in his individual capacity.

***2. Failure to State a Claim***

Defendants also argue that Plaintiff fails to state a claim under the ADA because Plaintiff's allegations all concern the alleged inefficacy of the medical treatment he received for his migraines. (Memo. at 11-12.) The court agrees.

To establish a claim under Title II of the ADA, Plaintiff must allege that (1) he is a qualified individual with a disability, (2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of disability. *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (citing 42 U.S.C. § 12132). However, even assuming Plaintiff can demonstrate he is a qualified individual with a disability, a "failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation." *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001). As the Tenth Circuit explained in *Nasious v. Colorado*, 495 F. App'x 899, 902 (10th Cir. 2012), "the ADA does not provide a remedy for medical negligence or a means to challenge 'purely medical decisions' regarding the propriety of a course of treatment." *See also Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability.").

Here, the gravamen of Plaintiff's Complaint is that he was denied testing, effective pain medication, and eyewear[6] to combat his migraine headaches.[7] (*See generally* Am. Compl. ¶¶ 27-

---

[6] In concluding that the failure to provide Plaintiff with tinted lenses or sunglasses to be worn indoors at KCCC does amount to a violation of the ADA, the court finds *Nasious* to be

76.) As discussed above, such purely medical decisions do not amount to a violation of the ADA. As such, the court finds that Plaintiff's ADA claim against the Idaho State Defendants is properly dismissed.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that the Idaho State Defendants' Motion to Dismiss (Doc. No. 66) be GRANTED and that Defendants Higgins, Idaho Department of Corrections, and Idaho Attorney General's Office be DISMISSED as defendants.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo

---

distinguishable. There District Judge Blackburn found a failure to accommodate a photophobic inmate's request to work in low-light conditions in his prison job. 2011 WL 2601015. at *3. Here, in contrast, Plaintiff alleges that Defendant Tiona, a medical professional, declined to approve Plaintiff's request for tinted glasses or sunglasses. (FAC ¶ 66-67.)

[7] Plaintiff also alleges that he was unable to avoid processed meats, as suggested by two of the neurologists, because it was a staple of the prison menu and the vegetarian diet caused him "gastric distress." (FAC ¶ 50.) However, Plaintiff does not allege that he requested an accommodation in this regard or that the need for an accommodation was obvious. *See Robertson*, 500 F.3d at 1196-97 (to state a claim under the ADA based on a failure to accommodate the plaintiff must have requested an accommodation or the need for an accommodation must have been obvious).

review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of August, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge