IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 13–cv–01342–REB–KMT


ERIC BROWN #48834,

      Plaintiff,

v.


IDAHO CORRECTIONAL CENTER,
WARDEN TIMOTHY WENGLER,
ASSISTANT WARDEN TOM KESSLER,
H.S.A. ACEL K. THACKER, CCHP,
DR. KIRK STANDER,
DR. DAVID AGLER,
KIT CARSON CORRECTIONAL CENTER,
WARDEN VANCE EVERETT,
ASSISTANT WARDEN GREG WILKINSON,
DR. SUSAN TIONA,
H.S.A. JODI GRAY, and
CORRECTIONS CORPORATION OF AMERICA,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on the "Motion for Summary Judgment of Susan Tiona,

Jodi Gray, Greg Wilkinson, Vance Everett, Corrections Corporation of America, Inc., Idaho

Correctional Center, Timothy Wengler, Tom Kessler, Acel K. Thacker, Kirk Stander and David

E. Agler." (Doc. No. 92, filed Oct. 14, 2014.) For the following reasons, the court respectfully

RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED.

## STATEMENT OF FACTS

Plaintiff Eric Brown is an inmate in the custody of the Idaho Department of Corrections

(IDOC) and is currently housed at the Kit Carson Correctional Center (KCCC) in Burlington,

Colorado. In his First Amended Complaint filed August 21, 2013 (Doc. No. 25 [FAC]), Plaintiff

alleges claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, as

well 42 U.S.C. § 1983 for failing to adequately treat his migraine headaches.

Defendant Corrections Corporation of America ("CCA") is a private corporation that

manages correctional facilities in Colorado and Idaho pursuant to contracts with those states.

(Mot. Summ. J. at 2-3; *see also id.,* Ex. J, Tom Kessler Declaration, ¶ 2 ["Kessler Decl."].)

Plaintiff began serving his sentence in the IDOC in June 1996. (FAC ¶ 19.) From December

1998 to January 2002, Plaintiff was housed at the IDOC's Idaho Maximum Security Institution

(IMSI). (*Id.* ¶ 22.) During his time there, Plaintiff experienced migraine headaches, for which

he was prescribed Imitrex (a/k/a Sumatriptan). (*Id.* ¶¶ 23-24.)

From January 2002 to September 2007, Plaintiff was housed at the Idaho Correctional

Center ("ICC"), a private prison facility owned and operated by CCA. (*See id.* ¶ 27.) While at

ICC, Plaintiff was initially treated by Defendant Kirk Stander, M.D. (Mot. Summ. J., Ex. A,

Dep. of Eric Brown, at 49:8-20 ["Brown Dep."].)[1]

---

[1] All citations to Plaintiff's deposition are to the corrected version of Exhibit A found at Docket
Number 111-1.

Upon his arrival at ICC, Plaintiff was taken off of Imitrex because it was "non-formulary." (FAC ¶ 28.)  Defendant Stander instead prescribed Plaintiff various medication for his migraines and recommended other medications. (*Id.* at 51:2-52:8.)  Plaintiff refused to take a number of medications recommended by Defendant Stander because they had been ineffective in the past. (*Id.* at 51:12-52:4.)  Although Defendant Stander urged Plaintiff to try these medications again, he did not force Plaintiff to take any medications Plaintiff thought would not be effective. (*Id.*)

Defendant Stander ordered an X-ray to determine if there was a physical cause of Plaintiff's headaches. (*See id.* at 53:8-24.)  The X-ray came back negative. (*Id.* at 53:25-54:7.)

At some unspecified time, Defendant Stander ended his tenure at ICC and Defendant David Alger, M.D., took over Plaintiff's care. (*See id.* at 49:8-12.)  Defendant Alger referred Plaintiff to three different neurologists to obtain recommendations for Plaintiff's care. (*Id.* at 71:3-15.)  Plaintiff underwent a CT scan and an MRI, which both came back negative. (*See id.* at 54:15-18, 71:3-5; Mot. Summ. J., Ex. C & D.)

Plaintiff asserts that after receiving care from both off-site specialists and ICC doctors, he was told there would be a follow-up visit with an ICC doctor within a couple of weeks. (Brown Dep. at 26:2-9.)  However, more often than not, Plaintiff would have to "initiate contact again to try to get a follow-up visit" weeks or months after the fact. (*Id.* at 26:9-11.)  Plaintiff maintains that Defendant Acel Thacker, the Health Services Administrator at ICC, was aware of this issue and failed to correct it. (*Id.* at 25:12-17.)

After Plaintiff learned that the nitrates and nitrites found in processed meat can make migraines worse, Defendant Alger recommended that Plaintiff try a vegetarian diet. (*Id.* at 97:18-25.) Plaintiff declined the vegetarian diet because it contained onions, which caused him gastric distress. (*Id.* at 96:19-22; 98:1-4.) Plaintiff was also given a no-onion diet; however that diet was discontinued after Plaintiff missed three consecutive meals. (*Id.* at 96:14-97:15.)

After trying several medications, Defendant Alger ultimately prescribed Plaintiff Imitrex. (*Id.* at 61:21-23.) Because inmate movement at ICC was controlled, Plaintiff could not return to his cell to take medication when he felt the onset of a migraine. (*Id.* at 66:17-25.) As such, Defendant Alger prescribed Plaintiff Imitrex as a keep on person ("KOP") medication so that he could take the medication when symptoms of a migraine began, even if he was away from his cell. (*Id.* at 61:19-62:14; 66:17-25.)

Plaintiff also discussed with Defendant Alger the possibility of using tinted lenses to alleviate his migraines. (*Id.* at 72:7-12.) However, Defendant Alger wanted to exhaust other treatment options first. (*Id.* at 71:16-72:17.) Plaintiff was transferred to KCCC before Defendant Alger could determine whether tinted lenses might be appropriate to treat Plaintiff's Migraines. (*Id.* at 72:3-6.)

Defendant Tom Kessler, the former warden at ICC, addressed several grievances filed by Plaintiff during his time at ICC. (Kessler Decl. ¶¶ 5-7.) Specifically, Defendant Kessler denied Plaintiff's January 26, 2012 grievance regarding being taken off the no-onion diet; granted Plaintiff's August 8, 2012 and October 6, 2011 grievances for a follow-up visit with a doctor to address the dosage of his medication; and granted Plaintiff's January 9, 2012 grievance regarding

a $5 co-pay charged for a follow up visit.  (*Id.*)  Defendant Kessler never directly participated in Plaintiff's healthcare.  (*Id.* ¶ 4.)

Plaintiff also maintains that Defendant Timothy Wengler, the warden at ICC, "would block the grievance process and agree with everything that someone lower said instead of looking into the matter," which on one occasion allegedly prevented Plaintiff from obtaining tinted lenses for his migraines.  (Brown Dep. at 9:2-22.)

In August 2012, Plaintiff was transferred to KCCC.  (FAC ¶ 62; Brown Dep. at 72:5-6.) As soon as he arrived at KCCC, Plaintiff was placed on chronic care status for his migraines, which allowed him to see a health care provider on a regular basis to monitor and treat his migraine headaches.  (Brown Dep. at 102:8-17; 191:10-21.)

Defendant Susan Tiona, a doctor at KCCC, provided Plaintiff with a prescription for Imitrex.  (FAC ¶ 64, 70.)  Plaintiff was informed that Imitrex could not be provided to him for self-medication, *i.e.* as a KOP drug, because it is not on the list of KOP drugs.  (Brown Dep. 39:15-23, 117:6-20.)

Instead, at KCCC, Plaintiff can access his Imitrex when he declared a medical emergency to a staff person.  (*Id.* at 105:22-106:15; 112:4-11.)  KCCC staff then calls for a "cease movement" to clear inmates from the hallway through which Plaintiff must travel to reach KCCC medical.  (*Id.* at 106:1-4.)  From there, Plaintiff walks either alone or with a staff person to KCCC medical where the medical staff takes Plaintiff's vitals, completes a brief questionnaire, gives him an Imitrex, and allows him to rest in a back room.  (*Id.* at 106:11-15.) Typically, it takes between 5 to 20 minutes after Plaintiff declares a medical emergency before

he arrives in the KCCC medical department to receive his medication.  (*Id.* at 106:6-10.)  It then

typically takes 15 to 20 minutes before he receives his Imitrex (*id.* at 184:18-23)—although on

several occasions it took between 30 and 90 minutes (*id.* at 184:8-11).

      Plaintiff returns to his cell when the migraine is resolved or diminished.  (*Id.* at 188:2-

24.)  There, Plaintiff lies down, puts earplugs in and covers his eyes.  (*Id.* at 189:5-15.)

Generally, Plaintiff's migraines resolve within 15 to 20 minutes after returning to his cell.  (*Id.*

189:18-21.)

      Plaintiff complained to Defendant Tiona about the length of time that passed from when

he declared a medical emergency before he received his Imitrex.  (*Id.* at 204:15-17.)  In response,

Defendant Tiona placed Plaintiff on a "watch list" to expedite treatment of his migraines.  (*Id.* at

204:17-205:9.)

      Plaintiff discovered from books and the internet that tinted lenses may be used as a

potential preventative measure for migraines.  (*See id.* at 120:2-7; 191:25-192:3.)  Plaintiff

discussed a prescription for tinted lenses with Defendant Tiona who responded that the evidence

as to whether tinted lenses could prevent migraines was anecdotal.  (*Id.* at 192:6-8.)  Defendant

Tiona also told Plaintiff she was unable to provide Plaintiff with tinted lenses for security

reasons (*id.* at 34:17-21) and that only an outside optometrist could prescribe Plaintiff tinted

lenses (*id.* at 193:4-11).  When Plaintiff saw an outside optometrist, he stated that he could not

prescribe tinted lenses to Plaintiff to treat his migraines.  (*Id.* at 146:14-147:4; 193:9-11.)

Instead, the optometrist provided Plaintiff with a new eyeglass prescription.  (*Id.* at 146:19-20.)

6

Defendant Wilkinson, the Assistant Warden at KCCC, and Defendant Everett, the former Warden at KCCC, both denied grievances Plaintiff filed regarding receiving Imitrex as a KOP medication at KCCC and wearing tinted lenses indoors.  (*Id.* at 42:23-43:6; 45:6-10.)  Plaintiff also maintains that Defendant Wilkinson is responsible for supervising the KCCC medical department (*id.* at 41:19-42:12) and that Defendant Everett supervised all of KCCC's institutional operations and had final authority over all grievance appeals (*id.* at 44:23-45:10). Finally, Plaintiff maintains that Defendant Jodi Gray, the Health Services Administrator at KCCC, was directly responsible for supervising the KCCC medical department and enforcing policies at KCCC, including the policy prohibiting the use of tinted lenses indoors.  (*Id.* at 32:8-33:8.)

## PROCEDURAL HISTORY

Plaintiff's First Amended Complaint asserts claims under § 1983 for violations of his Eighth and Fourteenth Amendment rights and a claim for violations of the ADA.  (FAC ¶¶ 92-95.)[2]

Plaintiff's Eighth Amendment claim alleges that Defendants' actions are causing long-term damages to his kidneys in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.  (FAC ¶ 92.)  More specifically, Plaintiff alleges that because the ICC and KCCC prison medical departments "refused to provide medications that work" and because the

---

[2] The First Amended Complaint also mentions the Fifth Amendment.  However, because Defendants are all alleged to be state actors, the Fifth Amendment is inapplicable.  *Parsini v. Colo. State Hosp.,* 992 F.2d 1223, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993) ("State actors are subject to the due process clause of the Fourteenth Amendment, not the Fifth Amendment.").

KCCC medical department refused to allow Plaintiff to keep Imitrex on his person in order to self-medicate, he had "little recourse but to use commissary medications or suffer." (FAC ¶ 88.) Plaintiff alleges that using over-the-counter pain medication from the commissary has caused damage to his kidneys. (*Id.* ¶ 85.)

Plaintiff's Fourteenth Amendment claim asserts that he was denied equal protection under the law because while Colorado Department of Corrections' (CDOC) inmates at KCCC have access to an ADA Coordinator who handles prisoner ADA issues, IDOC inmates at KCCC do not have a similar mechanism through which to address their ADA issues. (*Id.* ¶¶ 81-82, 95.) Finally, Plaintiff's ADA claim asserts that he was denied a reasonable accommodation under the ADA when he was (1) forced to call a medical emergency and wait for long periods of time to get a dose of Imitrex to address his migraines and (2) denied an opportunity to wear tinted glasses or sunglasses indoors in order to alleviate his migraines. (*Id.* ¶¶ 94-95.) [3]

Defendants' Motion for Summary Judgment was filed on October 14, 2014. (*See* Mot. Summ. J.) Plaintiff's Response was filed on January 30, 2015 (Doc. Nos. 107 & 108)[4] and

---

[3] In addition to the current Defendants, Plaintiff's First Amended Complaint also named the IDOC, the Idaho Attorney General's Office, and Virtual Warden Tim Higgins as defendants. (*See* FAC.) However, these Defendants were dismissed on September 19, 2014 when District Judge Robert E. Blackburn adopted this court's Recommendation (Doc. No. 86) to grant their Motion to Dismiss (Doc. No. 66). (Order, Doc. No. 87.)

[4] After Plaintiff maintained that he was not served with a copy of Defendants' Motion for Summary Judgment at the time it was filed (*see* Doc. No. 101), the court granted Plaintiff an extension through January 20, 2015 to file a response (*see* Doc. Nos. 103 & 106). Plaintiff's Response still was not filed until ten days after that deadline on January 30, 2015. (*See* Resp.) Nevertheless, because Defendants have not asserted that Plaintiff's Response should be rejected as untimely (*see* Reply), the court will consider Plaintiff's Response and the materials filed with it.

Defendants' Reply was filed on February 13, 2015 (Doc. No. 109).  Accordingly, this matter is ripe for the court's review and recommendation.

## LEGAL STANDARDS

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.  *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  Moreover, because

Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and

hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United*

*States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404

U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards

than formal pleadings drafted by lawyers").  At the summary judgment stage of litigation, a

plaintiff's version of the facts must find support in the record.  *Thomson v. Salt Lake Cnty.*, 584

F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

### A.     *Claims against ICC and KCCC*

As a threshold matter, Defendants argue that because ICC and KCCC lack a legal identity

apart from CCA, Plaintiff's claims against them fail as a matter of law.  The court agrees.  ICC

and KCCC are simply facilities run by CCA; they do not possess a legal identity separate from

CCA.  *Baird v. Corrs. Corp. of Am.*, 10-cv-00537-ZLW-CBS, 2011 WL 742466, at *3 (D. Colo.

Feb. 23, 2011) (citing *Steger v. Hickey*, No. CIV-08-174-C, 2009 WL 137314, at *1 (W.D. Okla.

Jan. 20, 2009)).  Stated differently, ICC and KCCC are not entities that may be sued.  *Steger*,

2009 WL 137314, at *1.  Therefore, the court finds that Plaintiff's claims against ICC and

KCCC fail as a matter of law.

**B.     *ADA Claim***

Defendants argue that Plaintiff's ADA claim fails as a matter of law because (1) individuals cannot be held liable under the ADA and (2) the ADA does not apply to a private prison management company like CCA.  The court agrees with both of these arguments.

Individual defendants in their individual capacities are not properly subject to suit under the ADA.  *Ebonie S ex rel. Mary S. v. Pueblo Sch. Dist.,* 819 F. Supp. 2d 1179, 1191-92 (D. Colo. 2011) (citing *Montez v. Romer,* 32 F. Supp. 2d 1235, 1241 (D. Colo. 1999)); *see also Nasious v. Colo.-Office of Governor Ritter,* No. 09-cv-01051-REB-KMT, 2011 WL 2601015, at *3 (D. Colo. June 29, 2011) (citing *Everson v. Leis,* 556 F.3d 484, 501 (6th Cir. 2009)).  As such, Plaintiff's ADA claim fails as a matter of law to the extent it is targeted at the individual defendants.

The court thus considers Plaintiff's ADA claim to the extent it is targeted at CCA only. The court construes this claim as arising under Title II of the ADA.  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  As is relevant here, the ADA defines a "public entity" as (1) any State or local government; (2) any department, agency, special purpose district, or *other instrumentality of a State or States or local government.* 42 U.S.C. § 12131(1) (emphasis added).  "The question is whether CCA, a private for-profit corporation, is an instrumentality of the State of Colorado with respect to KCCC [and] hence subject to Title II of the ADA as a 'public entity.'"  *Phillips v. Tiona,* 508 F. App'x 737, 748 (10th Cir. 2013).

11

The Tenth Circuit found in *Phillips* that CCA and other private prison management companies are *not* subject to Title II of the ADA. *Id.* at 747-754. Although the Tenth Circuit conducted a detailed analysis of the policy reasons as to whether a private prison corporation should be considered as a public entity under Title II, it ultimately concluded that the question must be answered through statutory interpretation. *Id.* at 754. Applying the canon of statutory construction *noscitur a sociis* (a word is known by the company it keeps), the court found that the ADA's use of "'instrumentality' refers to a traditional government unit or one created by a government unit." *Id.* Accordingly, the Tenth Circuit joined "the Eleventh Circuit and the overwhelming majority of other courts that have spoken directly on the issue, and [held] that Title II of the ADA does not generally apply to private corporations that operate prisons" *Id.* Notably, as is directly relevant to this case, the Tenth Circuit found that the ADA did not apply to "CCA with respect to the management of KCCC." *Id.*

Here, Plaintiff has asserted a Title II ADA claim against CCA, the same entity as was at issue in *Phillips*. Because *Phillips* clearly holds that Title II of the ADA does not apply to CCA with respect to its management of private prison facilities, the court finds that Plaintiff's ADA claim against CCA fails as a matter of law.

## C.      *Eighth Amendment Claim*

The Eight Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A claim for deliberate indifference has both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate

12

that his medical need is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted).

To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "'[D]eliberate indifference' is a stringent standard of fault." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.*; *see also Giron v. Corrs. Corp. of Am.,* 191 F.3d 1281, 1286 (10th Cir. 1999). Instead, the official must "know[] of and disregard[] an excessive risk to inmate health and safety." *Farmer,* 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "The Supreme Court has analogized [this standard] to criminal recklessness, to the conscious disregard of a 'substantial risk of serious harm.'" *Blackmon v. Sutton,* 734 F.3d 1237, 1244-45 (10th Cir. 2013) (citing *Farmer,* 511 U.S. at 836-37).

Importantly, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corrs.,* 165 F.3d 803, 811 (10th Cir. 1999). Indeed, a "prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Callahan v. Poppell,* 471 F.3d 1155, 1160 (10th Cir. 2006). So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate,

13

absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met. *Self,* 439 F.3d at 1233.

Defendants do not dispute that Plaintiff's persistent migraine headaches are sufficient to meet the objective component of an Eighth Amendment claim.  Instead, Defendants argue they are entitled to summary judgment because the undisputed facts show they were not deliberately indifferent to Plaintiff's serious medical needs.  For the following reasons, the court agrees.

### 1.      *Defendants Stander and Alger*

The court agrees that Defendants Stander and Alger provided Plaintiff with "exemplary care" for his migraines.  (Mot. Summ. J. at 19.)  Defendants Stander and Alger both saw Plaintiff on a number of occasions, prescribed several different medications in attempts to alleviate Plaintiff's migraines, ordered an X-ray, CT scan, and MRI to attempt to find the cause of Plaintiff's migraines, referred Plaintiff to three different neurologists for recommended care, and recommended that Plaintiff consider changing his diet.

The only conceivable basis for Plaintiff's claim against Defendant Stander is that he did not prescribe Imitrex to Plaintiff, even though it effectively combatted his migraines while at IMSI.  However, without more, this effectively amounts to a disagreement between Plaintiff and Defendant Stander over the preferred course of treatment, which is insufficient to establish an Eighth Amendment violation.  *Perkins,* 165 F.3d at 811; *see also Sherman v. Klenke,* 67 F. Supp. 3d 1210, 1232 (D. Colo. 2014) (collecting cases for the proposition that a prisoner has no right to be prescribed a particular medication for pain). Indeed, even if Defendant Stander knew that Imitrex had been effective in the past, there is nothing in the record to suggest that Defendant Stander understood Imitrex to be the <u>only</u> medication effective at treating Plaintiff's migraines.

14

As a consequence, it was not unreasonable, let alone criminally reckless, for Defendant Stander to exercise his independent medical judgment by exploring other medications that might also be effectively treat Plaintiff's migraines.  This is particularly true as Plaintiff admits that Imitrex did not alleviate his migraines all the time.  (Brown Dep. at 66:2-7.)

After taking over Plaintiff's care, Defendant Alger ultimately prescribed Plaintiff his preferred medication, Imitrex, as a KOP medication.  (*Id.* at 61:21-23.)  As such, the only apparent basis for Plaintiff's Eighth Amendment claim against Defendant Alger is that he would not prescribe Plaintiff tinted lenses.  However, the undisputed facts show that Defendant Alger was willing to consider tinted lenses once he exhausted other treatment avenues, but Plaintiff was transferred to KCCC before Defendant Alger was able to do so.  (*Id.* at 71:16-72:17.)  In any event, even if Defendant Alger had rejected Plaintiff's request to wear tinted lenses, this again would amount to no more than a disagreement over the proper course of treatment, which, as already discussed, is insufficient to establish an Eighth Amendment violation.  *Callahan,* 471 F.3d at 1160.

Accordingly, the court finds that Plaintiff has failed to establish a triable issue of fact as to whether Defendants Stander and Alger violated his Eighth Amendment rights.  Therefore, the court finds that Defendants Stander and Alger are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

### 2.   *Defendant Thacker*

The only facts in the record regarding Defendant Thacker are that he allegedly knew of scheduling delays regarding Plaintiff's follow-up visits and failed to correct that issue.  (Brown Dep. at 25:12-26-11.)  However, even if Defendant Thacker knew of these delays generally,

15

Plaintiff does not point to any specific facts demonstrating that Defendant Thacker knew a particular scheduling delay presented an excessive risk to his health and safety. As a consequence, even viewing the facts in a light most favorable to Plaintiff, he has not established triable issue as to whether Defendant Thacker violated his rights under the Eighth Amendment. Therefore, the court finds that Defendant Thacker is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

### 3.    *Defendant Tiona*

Much like Defendants Stander and Alger, the court finds that Defendant Tiona provided Plaintiff with exemplary care. Upon arriving at KCCC, Plaintiff was placed on chronic care status, which allowed him to see a health care provider on a regular basis to monitor and treat his migraines. Defendant Tiona also prescribed Plaintiff with his preferred medication, Imitrex.

The first apparent basis for Plaintiff's Eighth Amendment claim against Defendant Tiona is that she did not prescribe Imitrex to him as a KOP medication. However, the undisputed facts show that Plaintiff only complained to Defendant Tiona once about the length of time that passed between when he declared a medical emergency and received an Imitrex. (Brown Dep. at 204:15-17.) Defendant Tiona responded by placing Plaintiff on a "watch list" in order to expedite treatment of his migraines. (*Id.* at 204:17-205:9.) There are no facts in the record suggesting that Defendant Tiona knew this additional procedure still failed to assure timely treatment for Plaintiff's migraines. As such, the record fails to establish that Defendant Tiona knew that not allowing Plaintiff to have Imitrex as a KOP medication posed a substantial risk to his health and safety.

The second ostensible basis for Plaintiff's Eighth Amendment claim against Defendant

Tiona is that she declined to provide him with tinted lenses.  However, Defendant Tiona did not summarily reject Plaintiff's request for tinted lenses.  Instead, she concluded that the medical evidence as to whether tinted lenses could prevent migraines was anecdotal.  (*Id.* at 192:6-8.) Plaintiff disagreement with Defendant Tiona's medical judgment is insufficient to establish an Eighth Amendment claim.[5]  *Callahan,* 471 F.3d at 1160.

Finally, Plaintiff appears to assert that Defendant Tiona knew that Plaintiff suffered from chronic kidney disease and failed to acknowledge that taking over-the-counter pain medication to treat his migraines risked further damage to his kidneys.  (FAC ¶¶ 83-85.)  Even assuming Plaintiff actually suffers from chronic kidney disease—which is not established in the record— there is no evidence in the record suggesting that Defendant Tiona knew that Plaintiff was taking over-the-counter medications to alleviate his migraines or that those medications presented a risk of further damaging Plaintiff's kidneys.  As such, Plaintiff has failed to demonstrate that Defendant Tiona was deliberately indifferent to the risk that taking over-the-counter medication posed to his kidney health.

Accordingly, even construing the facts in a light most favorable to Plaintiff, the court finds that Plaintiff has failed to establish that Defendant Tiona violated his Eighth Amendment rights.  As a consequence, the court finds that Defendant Tiona is entitled to summary judgment on Plaintiff's Eighth Amendment claims.

---

[5] Moreover, Defendant Tiona did not simply rely on her own medical judgment to reject Plaintiff's request for tinted lenses—she referred him to an outside optometrist to discuss that request.  The outside specialist also declined to provide Plaintiff with tinted sunglasses.

### 4.      *Personal Participation of Remaining Defendants*

The court finds that the facts in the record fail to establish that Defendants Kessler,

Wengler, Wilkinson, Everett, and Gray personally participated in any violation of Plaintiff's

Eighth Amendment rights.  First, Plaintiff asserts that Defendants Kessler, Wengler, Wilkinson,

and Everett denied Plaintiff's grievances regarding being (1) removed from the no-onion diet, (2)

denied Imitrex as a KOP medication, and (3) denied tinted lenses to alleviate his migraines.

(Kessler Decl. ¶¶ 5-7; Brown Dep. at 9:2-22; 42:23-43:6; 45:6-10.)  It is well established,

however, that the "denial of a grievance, by itself without any connection to the violation of

constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."

*Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009).  Defendants Kessler, Wengler,

Wilkinson, and Everett were never directly involved in treating Plaintiff's migraines.  As such, to

the extent Plaintiff's Eighth Amendment claim is premised on Defendants Kessler, Wengler,

Wilkinson, and Everett's denial of his grievances, it fails as a matter of law.

Plaintiff also maintains that Defendants Wilkinson and Gray were responsible for

supervising the KCCC medical department and that Defendant Everett supervised all of KCCC's

institutional operations.  (Brown Dep. at 32:8-33:8; 41:19-42:12; 44:23-45:10.)  However,

liability under § 1983 does not lie merely because an individual has general supervisory authority

over another person who actually commits a constitutional deprivation.  *Martinez v. Milyard,* 440

F. App'x 637, 638 (10th Cir. 2011) (quoting *Poolaw v. Marcantel,* 565 F.3d 721, 732 (10th Cir.

2009)) ("Our circuit has long held that a 'supervisory relationship alone is insufficient for

liability under § 1983'").  Instead, a defendant-supervisor may be held liable under § 1983 only

when (1) the defendant promulgated, created, implemented, or possessed responsibility for the

18

continued operation of an official policy; (2) the policy caused the complained of constitutional harm; and (3) the defendant acted with the state of mind required to establish the underlying constitutional deprivation. *Dodds v. Richardson,* 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (citing *Summum v. City of Ogden,* 297 F.3d 995, 1000 (10th Cir. 2002)).

Here, the record does not demonstrate that Defendants Wilkinson and Everett promulgated, created, implemented, or possessed responsibility for a policy that caused a violation of Plaintiff's Eighth Amendment rights.  Instead, Plaintiff seeks to hold Defendants Wilkinson and Everett liable simply because they had general supervisory duties over KCCC medical department and KCCC institutional operations, respectively.  This is insufficient to establish that Defendants Wilkinson and Everett personally participated in the alleged violation of Plaintiff's Eighth Amendment rights.

Plaintiff does maintain that Defendant Gray was responsible for the policy prohibiting the use of tinted lenses indoors at KCCC.  (Brown Dep. at 32:8-33:8.)  However, as discussed above, the court finds that Defendant Tiona's failure to provide Plaintiff with tinted lenses did not violate his Eighth Amendment rights.  This forecloses Plaintiff from proving a supervisory-liability claim under § 1983 against Defendant Gray.  *Dodds,* 614 F.3d at 1204 ("[I]n any given § 1983 suit [for supervisory liability], the plaintiff must still prove a violation of the underlying constitutional right").

Moreover, even if Plaintiff could prove an underlying Eighth Amendment violation, Plaintiff must still prove that Defendant Gray was deliberately indifferent to the fact that the policy she enforced could cause such a deprivation.  *Id.* at 1199 (requiring that the supervisor acted with the same state of mind required to establish the underlying constitutional violation).

19

There are no facts in the record to suggest that Defendant Gray knew enforcing KCCC's policy against wearing tinted lenses indoors could prevent Plaintiff or other inmates suffering from migraine headaches from obtaining effective treatment.

Accordingly, even construing the facts in a light most favorable to him, the court finds that Plaintiff has failed to establish a viable Eighth Amendment claim against Defendants Kessler, Wengler, Wilkinson, Everett, and Gray. Therefore, the court finds that these defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

### D.    *Equal Protection Claim*

Defendants argue that they are entitled to summary judgment on Plaintiff's equal protection claim because there are no specific facts in the record showing that they acted with a discriminatory purpose. Although the court does not agree with this precise argument,[6] the court nevertheless finds that the facts in the record fail to support a viable equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment requires that no state deny any person within its jurisdiction the equal protection of the laws. U.S. Const. amend XIV. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). Thus, "[i]n order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that

---

[6] A showing of discriminatory purpose or intent is required only when the alleged equal protection violation is premised on the plaintiff's membership in a suspect class. Here, Plaintiff does not allege that the failure to provide him or other Idaho inmates with access to an ADA coordinator was based on a suspect classification, such as race, religious, or gender. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265 (1977) (equal protection claim requires proof of racially discriminatory intent or purpose; state action is not unconstitutional solely because it results in racially disproportionate impact). Where no suspect classification is alleged, the question is only whether the disparate treatment of similarly situated inmates is reasonably related to legitimate penological purpose. *See Templeman, infra* n.6.

they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998).

The court finds that Plaintiff has failed to demonstrate that he is similarly situated to KCCC's Colorado inmates. Plaintiff admits that Idaho inmates housed at KCCC are subject to IDOC regulations. (Resp. at 2; *see also* Mot. Summ. J., Ex. J, IDOC Policy No. 129.) Colorado inmates housed at KCCC, on the other hand, are subject to CDOC regulations. Notably, CDOC Administrative Regulation 750-04, which was promulgated pursuant to an ADA remedial plan entered in *Montez v. Hickenlooper,* No. 92-cv-870-JLK, governs prisoner requests for accommodation and establishes an ADA Inmate Coordinator and Facility ADA Coordinators. *Phillips,* 508 at 753. Plaintiff does not assert that a similar remedial plan is being enforced by an Idaho federal court, or that IDOC regulations set forth procedures similar to Administrative Regulation 750-04. As a consequence, the court finds that Idaho inmates at KCCC are not similarly situated in all material respects to the Colorado inmates at KCCC.[7] The court thus finds that Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that the "Motion for Summary Judgment of Susan Tiona, Jodi Gray, Greg Wilkinson, Vance Everett, Corrections Corporation of America, Inc., Idaho Correctional

---

[7] Plaintiff's equal protection claim would fail even if the court found that Idaho and Colorado inmates are similarly situated. Plaintiff does not assert that the disparate access to an ADA coordinator between Colorado and Idaho inmates is based on any suspect classification. As a consequence, Plaintiff must show that this distinction is "not reasonably related to some legitimate penological concern." *Templeman v. Gunter,* 16 F.3d 367, 371 (10th Cir. 1994) (citing *Turner v. Safley,* 482 U.S. 78, 89 (1987); *City of Cleburne,* 473 U.S. at 440). The court would likely find that KCCC has a legitimate penological purpose in complying with a court-ordered remedial plan by providing Colorado inmates with access to an ADA coordinator.

Center, Timothy Wengler, Tom Kessler, Acel K. Thacker, Kirk Stander and David E. Agler"
(Doc. No. 92) be GRANTED and that judgment be entered in favor of Defendants and against
Plaintiff on all claims asserted in this action.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may
serve and file written objections to the Magistrate Judge's proposed findings and
recommendations with the Clerk of the United States District Court for the District of Colorado.
28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A
general objection that does not put the district court on notice of the basis for the objection will
not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's
report and recommendation must be both timely and specific to preserve an issue for de novo
review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.
Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to
make timely objections may bar *de novo* review by the district judge of the magistrate judge's
proposed findings and recommendations and will result in a waiver of the right to appeal from a
judgment of the district court based on the proposed findings and recommendations of the
magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's
decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection
does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at
1059-60 (a party's objections to the magistrate judge's report and recommendation must be both
timely and specific to preserve an issue for *de novo* review by the district court or for appellate

22

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated July 27, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge